IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GUY LEONARD, JR. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-00360-D (BT) |
| | § | |
| COUNSELOR ROLT, | § | |
| | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Guy Leonard, Jr. filed this *pro se* prisoner civil rights action when he was incarcerated in the Dallas County Jail. *See* Comp. (ECF No. 3). The Court granted Leonard leave to proceed *in forma pauperis* and withheld issuing process pending judicial screening. Ord. (ECF No. 7). For the following reasons, the Court should dismiss the complaint for failure to state a claim upon which relief may be granted.

**I.**

Liberally construing Leonard's Complaint and subsequent response to the Magistrate Judge's Questionnaire, Leonard alleges that he slipped and fell at the Mansfield City Jail on March 3, 2018, while exiting his cell to get his "chow." *See* Compl. at 3 (ECF No. 3); Resp. to M.J. Quest. at 2 (ECF No. 10). He hurt his back, neck, right leg, and head and passed out. He was transferred to the Mansfield Medical Hospital.

Although unclear, it appears that Leonard intends to sue the Mansfield City Jail for failing to properly maintain their floors and failing to give him proper medical attention, instead ignoring his complaint and locking him in a single cell with a camera. *See* Resp. to M.J. Quest. at 3 (ECF No. 10). During this time, Leonard could not move or use the rest room and did not eat for approximately nine days. He further complains that the medicine he received from the Mansfield City Jail did not help his pain and that the Mansfield City Jail eventually sent him back to the hospital. *See id.*

He also complains that he was—presumably after the slip-and-fall—denied effective medical assistance at FCI Seagoville. More specifically, he claims that he was not allowed to speak with the "head doctor" of FCI Seagoville who, along with Counselor R.O.L.T., denied him medical attention and aid. *See id.* at 2. However, he also claims that he "kept talking" with Counselor R.O.L.T. and "the Dr." about speaking with an attorney "about this matter." *Id.* at 4. But he never got the chance to talk with an attorney or the "U.S. Marshall [sic]" about conducting a full investigation of his slip-and-fall. He claims that the Mansfield City Jail and FCI Seagoville deprived him of a lawyer.

As for the U.S. Marshal, Leonard clarified in his response to the Magistrate Judge's Questionnaire that he intends to sue the organization for housing him at the Mansfield City Jail. *See id.* at 4. Although Leonard's writing on this point is difficult to decipher, he appears to contend that the

floors of the Mansfield City Jail were in bad shape and that this was known among the staff members and nurses, several of whom had "problems" with the floors "on every pod inside the jail." *Id.* at 4. So, it was inappropriate for the U.S. Marshal to house him there.

Based on these facts, Leonard seeks punitive damages, damages for his pain and suffering, and medical expenses.

## II.

Leonard's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]"

3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

1. **Mansfield City Jail**

Leonard clarified in his response to the Magistrate Judge's Questionnaire that he intends to sue the Mansfield City Jail for his slip-and-fall. Resp. to M.J. Quest. at 2 (ECF No. 10). However, the Mansfield City Jail is a nonjural entity that is not subject to suit under § 1983. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). A governmental department cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency jural authority." *Darby*, 939 F.2d at 313 (agency of city government); *see also Lindley v. Bowles*, 2002 WL 1315466, at *2 (N.D. Tex. Oct. 31, 2002) (finding Dallas County Jail is not a proper defendant with a jural existence); *Johnson v. Jail*, 2016 WL 416368, at *1 (N.D. Tex. Feb. 2, 2016) (noting that the City of Mansfield—not the Mansfield City Jail—is correct defendant).

4

Because the Mansfield City Jail is a nonjural entity, this defendant should be dismissed.

### 2. FCI Seagoville Unit Head Doctor and Counselor R.O.L.T.

Leonard also asserts a claim against the unidentified head doctor of the FCI Seagoville Unit and a "Counselor R.O.L.T" for the inadequate medical care he received at the FCI Seagoville Unit. As these defendants are presumably federal officials, Leonard's suit is under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "Bivens is the counterpart to 42 U.S.C. § 1983," and it extends the protections afforded under Section 1983 to federal actors. *Chapman v. United States*, 2006 WL 3831227, at *1 n. 8 (N.D. Tex. Dec. 27, 2006) (citing *Evans v. Ball*, 168 F.3d 856, 863 n. 10 (5th Cir. 1999); *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993)). "Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*." *Martikean v. U.S.*, 2012 WL 1986919, at *1 (N.D. Tex. April 6, 2012).

Turning to the merits of the claim, Leonard alleges in conclusory fashion, that the head doctor and Counselor R.O.L.T. denied him "proper medical attention, aid and assistance" and failed to conduct a "full investigation." Resp. to M.J. Quest. at 2 (ECF No. 10). He also alleges that

5

he was precluded from speaking with the head doctor at some point. *See id.* at 3.

Leonard's claim for constitutionally inadequate medical treatment is governed by the "deliberate indifference" standard of the Eighth Amendment to the United States Constitution. U.S. CONST. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a constitutional violation, Leonard must show that Defendants acted with deliberate indifference to his medical needs such as to cause the "unnecessary or wanton infliction of pain." *Estelle*, 429 U.S. at 106. This requires proof that Defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

Leonard's allegations here fail to state a plausible claim that the head doctor of the FCI Seagoville unit or Counselor H.O.L.T. acted with deliberate indifference to his serious medical needs to cause the "unnecessary or wanton infliction of pain." He only alleges in conclusory fashion that these Defendants failed to provide medical attention, aid, and assistance. But he provides no details supporting this conclusory allegation, and this Court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). Leonard fails to allege facts from which the

6

Court could determine that either the head doctor and/or Counselor R.O.L.T. was subjectively aware of a serious risk of harm to Leonard and failed to take reasonable measures to abate that risk. *See Farmer*, 511 U.S. at 847.

### 3. Deprivation of Attorney

Leonard also complains that Counselor R.O.L.T. and the head doctor deprived him of the "rights to an [sic] civil attorney." Compl. at 3 (ECF No. 3). When asked to elaborate on this claim, Leonard indicated that he "kept talking with Counselor R.O.L.T. and the Dr. to [sic] talk with an attorney about this matter . . . . I never got the chance to talk with any attorney or the U.S. Marshall [sic] about conducting a full investigation concerning my slip and fall . . . ." Resp. to M.J. Quest. at 4 (ECF No. 10).

Leonard does not specify the constitutional right alleged to have been violated. In a civil action there is generally no constitutional right to an attorney. *See generally Lopez v. Reyes*, 692 F.2d 15, 18 (5th Cir. 1982). An inmate does have a constitutional right of access to the courts that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 354 (1996); *see also Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (noting that "the Supreme Court has not

7

extended [the right of access] to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court"). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex Parte Hull*, 312 U.S. 546,549 (1941). Instead, to fulfill its constitutional obligations, prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Degrate v. Godwin*, 84 F.3d 768-69 (5th Cir. 1996).

Further, to prevail on a claim that his right to access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted).

Here, Leonard fails to allege facts supporting a right-of-access-to-the-courts claim. He has not alleged Defendants prevented him from making any legal filing. Nor has he shown prejudice from the supposed denial of access to the courts (if that is, indeed, what he is claiming). Instead, as discussed, his conditions of confinement claim related to his slip-and-fall is meritless.[1]

---

[1] This would be so even if Leonard had filed the claim against the correct defendant. Federal courts have noted that prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations as a matter of law. *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014); *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (noting that "slippery floors constitute a daily risk faced by members of the public at large," and are

Leonard's claim further appears to ask the Court to extend a *Bivens* remedy to a new area—which is a disfavored judicial activity. "*Bivens*, unlike Section 1983, is not a Congressional statute that 'entitles an injured person to monetary damages if a state official violates his or her constitutional rights.'" *Berk v. Wiggins*, 2020 WL 6528937, at *4 (N.D. Tex. Oct. 6, 2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017)). The United States Supreme Court has found implied damages remedies under the Constitution itself only three times. First, in *Bivens* itself, the Court found an implied damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. *See Bivens*, 403 U.S. at 397. Then, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the Fifth Amendment Due Process Clause gave a

---

insufficient to demonstrate cruel and unusual punishment); *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (finding that "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment"). Indeed, courts in this circuit routinely reject such claims. *See Nobles v. Grimes*, 350 F. App'x 892-93 (5th Cir. 2009) (affirming dismissal as frivolous of prisoner section 1983 claim that defendant was deliberately indifferent for failure to correct slippery shower floor); *Beasley v. Anderson*, 67 F. App'x 242 (5th Cir. 2003) (same); *Mack v. Johnson*, 48 F. App'x. 105 (5th Cir. 2002) (same); *Bowens v. Brewer*, 2020 WL 927687, at *1 (S.D. Miss. Feb. 26, 2020) (rejecting claim that hazardous floor condition causing inmate to slip-and-fall could sustain section 1983 claim). This is so because "the existence of slippery conditions in any populous environment represents at most ordinary negligence rather than a condition so threatening as to implicate constitutional standards." *Coleman*, 745 F.3d at 764; *see also Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995) (finding that slip-and-fall lawsuits present "garden-variety negligence claim[s] . . . not actionable under section 1983").

damages remedy for gender discrimination. *See id.* at 248-249. And finally, in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave a damages remedy for failure to provide adequate medical treatment." *See id.* at 19.

The Supreme Court clarified in *Ziglar* that extending the *Bivens* remedy to new factual scenarios is a "disfavored" judicial activity. *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). Now, to determine whether a claim is cognizable under the *Bivens* doctrine, courts should ask: (1) whether the instant case involves a "new context" that is distinct from prior *Bivens* cases and (2) whether any "special factors" preclude extending *Bivens* to this "new context." *See Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) (quoting *Hernandez v. Mesa*, 885 F.3d 811, 816-18 (5th Cir. 2018) (en banc)).

Applying that test, the Supreme Court has never extended *Bivens* to include First Amendment claims, and lower courts have consistently rejected such an extension. *See Iqbal*, 556 U.S. at 675 ("we have declined to extend *Bivens* to a claim sounding in the First Amendment"); *Akande v. Philips*, 2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018) (collecting cases and noting that nationwide, district courts have been in agreement that a prisoner may not bring a First Amendment action under *Bivens*). And because a right-to-access-the-courts claim stems from the First Amendment, it is not cognizable under *Bivens* and its progeny. *See*

10

*generally Ali v. Immigration and Customs Enforcement*, 2017 WL 4325785 at *5 (N.D. Tex. Aug. 29, 2017) (noting that right-to-access-court claims find their source in the First Amendment).

Thus, because Leonard's right-to-access-the-court claim (to the extent he has pleaded it) is meritless and not cognizable under *Bivens*, it should be dismissed.

### 4. U.S. Marshal's Service

Leonard also clarified in his response to the Magistrate Judge's Questionnaire that he intends to sue the U.S. Marshal for housing him at the Mansfield City Jail, which had poorly maintained floors. Resp. to M.J. Quest. at 4 (ECF No. 10). However, the U.S. Marshal Service is immune from suit. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471 (1994). Leonard has not alleged, and the Court is not aware, that the U.S. Marshal has waived its sovereign immunity via any statute or through any other means. Consequently, Leonard's claims against the U.S. Marshal for monetary compensation are barred by sovereign immunity. Alternatively, a *Bivens* action may not be brought against a federal agency. *Meyer*, 510 U.S. at 486.

### IV.

The Court recommends that the complaint be dismissed under 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

Ordinarily, a *pro se* plaintiff should be granted the opportunity to amend his complaint prior to a dismissal but leave to amend is not required when the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Here, the Court sent Leonard a Magistrate Judge's Questionnaire seeking all facts regarding his claims. Leonard has therefore already pleaded his best case and should not be given leave to amend.

**SO RECOMMENDED.**

January 8, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).